**168**     WESTERN UNION TEL. CO. *v.* TYLER *et al.* [Sept. T.

Opinion of the Court.

## THE WESTERN UNION TELEGRAPH COMPANY

*v.*

## JAMES E. TYLER *et al.*

. 1. TELEGRAPH COMPANIES — *exemption construed.* The usual regulations exempting telegraph companies from liability for errors in unrepeated messages, exempts them only for errors arising from causes beyond their own control.

2. SAME — *requirement on blanks, no contract.* The regulation requiring messages to be repeated, printed on the blank on which a message is written, is not a contract binding in law, as the duty arises to send the same correctly upon payment of the charge required. Such regulation is void for want of consideration, and as being against public policy.

3. SAME — *burden of proof.* Where the inaccuracy in the transmission of a message is proved, the *onus* of relieving the telegraph company sending the same, from the presumption of negligence thereby raised, rests upon the company, by showing that the error was caused by some agency for which it is not liable.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

Messrs. DENT & BLACK, and Messrs. WILLIAMS & THOMPSON, for the appellant.

Messrs. COOPER, GARNETT & PACKARD, for the appellees.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This case was before this court at the September term, 1871, and reported in 60 Ill. 421. It was then ably argued by counsel and fully considered by the court. The authorities were critically examined, and it was found they were not entirely harmonious as to the principles which should be applied to and govern telegraph companies, leaving this court at full liberty to adopt such rules and apply such principles to them, as might seem best calculated to protect those who are compelled to resort to those wonderful instrumentalities by

which they operate, and at the same time impose no unnecessary hardship or liability upon them.

The cause having been remanded, a new trial has been had, and the court below, as in duty bound, applied to the cause the principles we had recognized as correct, the result of which was a verdict and judgment for the plaintiffs, in an amount sufficient to cover the damages they had sustained by the negligence of the defendants in transmitting their message.

The first appeal was taken by the plaintiffs in the action, they complaining, justly, as we thought, that through and by the misdirection of the court to the jury as to the law of the case, they had been permitted to recover only the amount of the company's charges for sending the message, allowing them no damages for the loss they had suffered by reason of their negligent and careless mistake.

This appeal is taken by the telegraph company, and great efforts have been made to induce this court to depart from the ground it occupied on the first appeal, by questioning the correctness of the principles which governed our ruling. These have caused us to re-examine that case and those principles, to explore anew the whole ground, and we desire to say, and that most emphatically, there is nothing in the opinion then delivered we desire to retract or modify, fully believing it is sanctioned by reason, by law and by justice, alike demanded by public policy and public necessity.

The rule there announced is, that the usual regulations exempting companies from liability for errors in unrepeated messages, exempts them only for errors arising from causes beyond their own control, and that the inaccuracy of the message being proved, the *onus* of relieving themselves from the presumption of negligence thereby raised, rests upon the company.

And in regard to the regulation of the company requiring messages to be repeated in order to insure correct results, for which the sender is to pay fifty per cent in addition to the original cost, we endeavored to show, that such was then the

22—74TH ILL.

170    WESTERN UNION TEL. CO. *v.* TYLER *et al.* [Sept. T

Opinion of the Court.

perfection to which the art of telegraphy had reached, that the real object of such a requirement was to increase the revenue of the companies. The proposition may be thus stated : The company engages to use all proper skill and care in transmitting a message over its wires for the established rates. The duty at once arises, the charges being paid, to transmit this message as delivered—not a different message, but the one de livered and no other—the sender has paid his money to have this message sent. The undertaking of the company is, *prima facie*, to send it correctly, and if their wires and instruments are in proper order, and their operators skillful and careful, it will traverse the wires precisely in the words and figures which composed it when placed upon the wires, and is sure, in that shape and form, to reach its destination, no atmospheric causes intervening to prevent. The very fact that but few cases of negligence have been brought against these companies is strong proof they do, in almost all cases, transmit messages correctly, and they can always do it if they take proper care, have the requisite skill and use proper instruments. If they will do all this, there is no need of repeating a message, and it must be regarded as a contrivance to swell their receipts. In the ordinary course of business, the newspapers inform us, and we have no reason to doubt the truth of the statement, telegrams are sent from New York to London, and answers received, in about thirty-three minutes, they having passed through thirty-six different hands, and traveled over seven thousand miles ! This is done every day, such is the perfection to which the art is brought. Does an instrumentality which can perform such feats, require the fostering care of courts ? Is it an infant yet in its swaddling clothes? No, but a giant power, under the control of man, whose daily exploits, guided by his care and skill, throw those of the fabled Mercury deep into shade and far in the rear.

On the question whether the regulation requiring messages to be repeated, printed on the blank of the company on which a message is written, is a contract, we held, it was not a con-

tract binding in law, for the reason, the law imposed upon the companies duties to be performed to the public, and for the performance of which they were entitled to a compensation fixed by themselves, and which the sender had no choice but to pay, no matter how exorbitant it might be. Among these duties, we held, was that of transmitting messages correctly ; that the tariff paid was the consideration for the performance of this duty in each particular case, and when the charges were paid, the duty of the company began, and there was, therefore, no consideration for the supposed contract requiring the sender to repeat the message at an additional cost to him of fifty per cent of the original charges.

We remain, after careful examination, of the same opinion.

Since the opinion in 60 Ill. was delivered, this subject has been fully considered by the Supreme Court of our neighboring State of Wisconsin, and in a very able opinion, delivered by the chief justice of that court, our views and conclusions are substantially approved, and they hold that regulations exempting a telegraph company from liability for its own negligence are void for want of consideration. *Comdee* v. *Western Union Telegraph Co.*, decided October term, 1873.

In the Supreme Court of Maine, the case of *Bartlett & Wood* v. *The Western Union Telegraph Company* was considered and determined. The action was brought to recover damages for the incorrect transmission of a message. The dispatch was to a grain merchant in Chicago, ordering ten thousand bushels of corn, but, as received and delivered, read, " one" thousand bushels. It required two or three days to correct the error, during which time the price of corn had advanced ten cents per bushel, making a loss to the plaintiffs of nine hundred dollars.

The court said, a rule adopted by a telegraph company as follows: "The Western Union Telegraph Company will receive messages for all stations east of the Mississippi river, to be sent during the night, at one-half the usual rates, on condition that the company shall not be liable for errors or

delay in the transmission or delivery, or for non-delivery of such messages from whatever cause arising, and shall only be bound in such case to return the amount paid by the sender," is against public policy, and therefore void. When assented to by the sender, so as to become a contract, it is equally void, as against public policy, and also because its terms are repugnant, assuming to impose an obligation, and by the same act releasing from all obligations. In an action to recover damages of a telegraph company for an error in the transmission of a message, in the absence of any rule or contract fixing the company's liability, the plaintiff makes out a *prima facie* case by proof of the undertaking, error, and damage. The burden rests upon the company to show that the error was caused by some agency for which it is not liable."

This is in perfect harmony with this case as reported *supra.*

The defendants in the case before us sought to overthrow the *prima facie* case made by the plaintiffs, on the principles settled by this court, by proposing to prove by persons understood to be skilled in telegraphy that there were certain inherent imperfections in the art and practice of telegraphy beyond the control of human agency, and which often operate to impair or interfere with the accuracy of transmission of a message. This proof the court refused to receive, and we think properly. The opinion in this case then before the court, on this trial assumes there are causes, atmospheric and others, not under the control of the operator, to prevent the accurate transmission of a message. It was not proposed to prove the mistake in this case was occasioned by any of those causes. The testimony was therefore unimportant. Besides, the testimony was rather of a speculative character, and too remote to be connected with this case, and was properly rejected. As well might a common carrier by railroad, to discharge itself from liability for loss of goods, offer to prove that carrying goods by that mode was subject to accidents, the causes of which had not been satisfactorily ascertained.

As to the instructions, we are of opinion the court properly disposed of them. And in reviewing the whole case we find no occasion to take back any thing that was said in the first opinion, or to abandon any position therein taken. The only safe rule for the public is to hold these companies to the same liabilities as natural persons, who, when they undertake for a compensation to perform a duty or work, shall perform it, or to be excused shall show a good reason for the exemption, and the *onus* must rest upon the company.

In this case no reason is shown; the negligence is established, by which a loss occurred to the plaintiffs, and justice, reason and public policy demand the company shall make good the loss, and this they will do by the affirmance of the judgment of the Superior Court.

The judgment of that court is affirmed.

*Judgment affirmed.*